# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

**SANDY BURKE,**
    Plaintiff,

**v.**

**TALLADEGA CITY BOARD OF EDUCATION,** *et al.***,**
    Defendants.

**Case No. 1:21-cv-1094-CLM**

*and consolidated case no.*: **1:22-cv-666-CLM.**

## MEMORANDUM OPINION

Sandy Burke sues the Talladega City Board of Education and many individuals within the Talladega School System for discrimination based on race, age, and disability, and for retaliation and retaliatory harassment while she worked for the Board. The individual defendants now move to dismiss all claims brought against them in their official capacities. Additionally, Board CFO Leslie Bollendorf moves to dismiss Count 13 (Race Discrimination, Failure to Promote) and Count 14 (Retaliation) against her. As explained below, the court **GRANTS** the defendants' motion to dismiss in its entirety. (Doc. 54).

## BACKGROUND

Sandy Burke is a white woman who has worked for the Talladega City Board of Education for 24 years. Before that, she worked as assistant manager at a financial institution for 10 years. Burke alleges that for at least 10 years, while she worked for the Board, the Board only hired African American individuals for positions. She says she did not receive promotions and was not selected for positions even though she was more experienced than the African American individuals selected. (Doc. 52, p. 6, ¶¶ 19-24).

Burke alleges several instances over seven years in which the Board did not select her for various positions. Burke now sues the Talladega City

Board of Education and individual defendants within the Talladega School System for:

- Race Discrimination:
    - Failure to Promote (Counts 1-4 and 13)
    - Disparate Treatment (Count 11)
- Age Discrimination: Failure to Promote (Count 5)
- Disability Discrimination: Failure to Promote (Count 6)
- Retaliation (Counts 7-10 and 14)
- Retaliatory Harassment/Hostile Work Environment (Count 12).[1]

Along with suing the Board, Burke sues Cynthia Watts (Principal), Leslie Bollendorf (Board CFO), Terry Roller (Superintendent), Tony Ball (Superintendent), and Gloria Thomas (student services) in their individual and official capacities. (Doc. 52, pp. 3-4, ¶¶ 6-10).

Before Burke filed her fourth amended complaint (doc. 52), the Board and many individual defendants moved to dismiss her Race Discrimination (Failure to Promote) and Retaliation claims against them under 42 U.S.C. § 1981 (by and through § 1983). (Docs. 26, 27). The court issued an opinion granting in part and denying in part the defendants' motions. (Doc. 32). Burke then moved to consolidate this case (Case No. 1:21-cv-1094) with a similar case (Case No. 1:22-cv-666), and the court granted her motion to consolidate. (Doc. 36).

In response to Burke's fourth amended complaint, individual defendants Watts, Bollendorf, Roller, Ball, and Thomas collectively move the court to dismiss all official capacity claims asserted against them. And Bollendorf moves to dismiss Count 13 (Race Discrimination, Failure to Promote) and Count 14 (Retaliation) against her. (Doc. 54).[2]

---

[1] Burke's causes of action are stated here as alleged in her fourth amended complaint. (Doc. 52).
[2] In this court's memorandum opinion and order addressing the defendants' motions to dismiss plaintiff's first amended complaint, the court dismissed the same claims: race discrimination (failure to promote) and retaliation, against all individual defendants except Superintendents Roller and Ball. (*See* Doc. 32).

Drawing on its previous ruling (doc. 32) and the reasons stated below, the court will **DISMISS** all official capacity claims asserted against individual defendants Watts, Bollendorf, Roller, Ball, and Thomas. The court will also **DISMISS** both Count 13 (Race Discrimination, Failure to Promote) and Count 14 (Retaliation) against Bollendorf in her individual capacity.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court accepts the plaintiff's well-pleaded allegations as true and makes reasonable inferences in her favor. *Crowder v. Delta Air Lines, Inc.*, 963 F.3d 1197, 1202 (11th Cir. 2020). But those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. And the court disregards both conclusory statements and "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Section 1981 prohibits race discrimination and retaliation in connection with employment contracts. But Section 1983 "constitutes the exclusive federal remedy for violation by state actors of the rights guaranteed under § 1981." *Bryant v. Jones*, 575 F.3d 1281, 1288 n.1 (11th Cir. 2009). Other than causation, these Section 1981 claims use the same requirements of proof and the same analytical framework as claims under Title VII of the Civil Rights Act of 1964. *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). As for causation under Section 1981, the plaintiff "bears the burden of showing

that race was a but-for cause of [her] injury." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020).

### A. Official Capacity Claims

Individual defendants Watts, Bollendorf, Roller, Ball, and Thomas collectively move the court to dismiss all official capacity claims asserted against them in Counts 1-4 and 7-14. (Doc. 54, p. 1). They argue that any official capacity claims against them are redundant of the claims against the Board. (Doc. 54, pp. 3-4).

"Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). As the circuit court reasoned in *Busby*, "[t]o keep both the City and the officers sued in their official capacity as defendants in this case would have been redundant and possibly confusing to the jury." *Id.*

As stated in the court's memorandum opinion on the defendants' motion to dismiss Burke's first amended complaint, all official-capacity race-discrimination claims alleged against the individual defendants are redundant of those against the Board. *See Cook v. Randolph Cnty.*, 573 F.3d 1143, 1149 (11th Cir. 2009); *Busby*, 931 F.2d at 776; *Harris by & through Davis v. Autry*, No. 20-13480, 2022 WL 392169, at *6 (11th Cir. Feb. 9, 2022). And this rule applies "when [a municipal] officer is sued under Section 1983." *Busby*, 931 F.2d at 776. So the rule applies equally to Burke's race-discrimination claims brought by and through § 1983 (Counts 1-4, 11, 13, and 14) and to Burke's retaliation claims brought by and through § 1983 (Counts 7-10 and 12). Accordingly, the court will **DISMISS** all official capacity claims against individual defendants Watts, Bollendorf, Roller, Ball, and Thomas.

—

Before moving on to the individual counts, the court must clarify an error in its prior opinion. The court previously dismissed all official capacity claims against the individual defendants, but simultaneously stated that Burke's retaliation claim could "proceed to discovery against the Board and against Gloria Thomas in her official capacity." (Doc. 32, p. 13). Circuit precedent requires the court to dismiss all claims against individual defendants redundant of those against the Board. *See Busby*, 931 F.2d at 776. So the court's previous statement that Burke's retaliation claim could proceed against Gloria Thomas in her "official" capacity was error. But the court reaffirms that Burke's retaliation claim may proceed against the Board and against Thomas in her *individual* capacity.

## B. Individual Counts

### Count 13: Race Discrimination, Failure to Promote under 42 U.S.C. § 1981 (by and through § 1983)

Because Burke brings a race discrimination claim, the court must ultimately analyze this claim under the framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The Eleventh Circuit recently clarified that the ultimate question under the *McDonnell Douglas* framework is "whether there is a sufficient evidentiary basis for the jury to find that the defendant intentionally discriminated against the plaintiff." *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 947 (11th Cir. 2023) (citing *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1194 (11th Cir. 2004)). But at the pleading stage, Burke "need not allege facts sufficient to make out a classic *McDonnell Douglas* prima facie case." *Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955, 974 (11th Cir. 2008) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)).[3] Burke must provide "enough factual matter (taken as true) to suggest" intentional race discrimination. *Id.* (quoting *Twombly*, 550 U.S. at 556). "This is because *McDonnell Douglas*'s burden-shifting framework is an evidentiary standard, not a pleading requirement." *Surtain v. Hamlin Terrace Found.*,

---

[3] The Supreme Court abrogated *Davis* on other grounds through *Twombly* and *Iqbal*. *See Doscher v. Holding*, No. 22-13184, 2023 WL 6060559, at *3 (11th Cir. Sept. 18, 2023) (recognizing abrogation); *see also LaCroix v. Western Dist. of Ky.*, 627 F. App'x 816, 818 (11th Cir. 2015).

789 F.3d 1239, 1246 (11th Cir. 2015) (citation omitted). And allegations that, taken as true, show but-for causation would attach liability to a particular defendant. *See Comcast Corp.*, 140 S. Ct. at 1014.

In Count 13, Burke alleges that she applied for the Secretary position at R.L. Young in August 2022, that Bollendorf conducted the interviews, and that Bollendorf did not interview Burke or select her for the position. Burke says she was qualified for the position but an African American applicant with far less experience or no experience at all was selected. Burke says the Board had a custom of hiring only African American applicants, so her race was a reason that she wasn't selected. (Doc. 52, pp. 67-70, ¶¶ 402-23). She also alleges in her response to Bollendorf's motion to dismiss that as Board CFO, "Bollendorf *is* the Board" and that Bollendorf selected applicants and then recommended them to the Board. (Doc. 58, pp. 10-12).

The court will assume (but not decide) for purposes of its analysis that Burke's allegations, taken as true, suggest intentional discrimination. So Burke can proceed against Bollendorf on her race-discrimination claim if her complaint plausibly alleges an "adequate causal link" between Bollendorf's allegedly unlawful conduct and Burke's injury. *Carruth v. Bentley*, 942 F.3d 1047, 1055 (11th Cir. 2019); Doc. 32, p. 8. But Burke's complaint fails to do so. The court even addressed this claim against Bollendorf (among other individual defendants) previously. *See* Doc. 32, p. 9. And the court found that Burke's allegations that Bollendorf did not provide Burke with an interview or select her for the Secretary position do not support a finding that Burke would have received the Secretary position but-for Bollendorf's actions. *Id.* at 9-10.

But even if it did, causation does not exist "when the continuum between Defendant's action and the ultimate harm is occupied by the conduct of deliberate and autonomous decision-makers." *Carruth*, 942 F.3d at 1056 (citation omitted). As Board CFO, Bollendorf worked *under*

6

the superintendent.[4] And the superintendent had final say in recommending applicants for hire to the Board.[5] Burke makes no allegations in her complaint that the Board CFO was synonymous with "the Board" to which the superintendent reported. And if she did, Burke would be alleging claims against Bollendorf in her official capacity—which would be redundant of Burke's claim against the Board itself. *Busby*, 931 F.2d at 776. As the court has found (*see* doc. 32, p. 9), Superintendent Roller and Superintendent Ball are "deliberate and autonomous decision-makers" who stand in the way and break the causal connection between Bollendorf's actions and Burke not receiving the Secretary position. *Carruth*, 942 F.3d at 1056.

The court previously dismissed all failure to promote claims against the individual defendants (including Bollendorf) in this lawsuit for the same reason. The court then allowed Burke the opportunity to amend her complaint. In her fourth amended complaint, Burke reasserted the same claims (Race Discrimination: Failure to Promote, and Retaliation) among others. But the court finds no reason to stray from its previous decision on those claims. (Doc. 32, pp. 9-10). For these reasons, the court dismisses Count 13 (Race Discrimination, Failure to Promote) against Bollendorf.

### Count 14: Retaliation under 42 U.S.C. § 1981 (by and through § 1983)

Burke brings a retaliation claim in Count 14 under 42 U.S.C. § 1981.[6] "To establish a claim of retaliation under Title VII or section 1981,

---

[4] *See* Ala. Code. § 16-13A-5 ("The chief school financial officer shall work *under* the direct supervision of the local superintendent of education but shall have a fiduciary responsibility to the local board of education." (emphasis added)).

[5] *See* Ala. Code § 16-12-19 ("The city board of education shall, *upon the recommendation of the city superintendent of schools*, employ such professional, clerical, accounting and statistical assistants as, in the judgment of the board, are necessary." (emphasis added)).

[6] While Burke does not specify in her complaint under which statute she brings her retaliation claim, in her response to the pending motion to dismiss (doc. 54), she alleges that she has "pled plausible Section 1981 discrimination and retaliation claims against Bollendorf." (Doc. 58, p. 15). So the court construes her retaliation claim as pled under 42 U.S.C. § 1981. But even if Burke intended to bring her retaliation claim under Title VII, both statutes require the same

a plaintiff must prove that he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events." *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008) (citing *Burlington*, 548 U.S. 53). So at the pleading stage, Burke must allege sufficient facts to plausibly suggest these three elements are present.

Burke alleges that she engaged in protected activity by filing an EEOC discrimination charge in March 2022 and by filing this lawsuit. She says that since then, the Board and Leslie Bollendorf retaliated against her by (1) not providing her an interview when she applied for the Secretary position at R.L. Young in August 2022 and (2) not selecting her for that position. Burke says that the defendants' conduct would deter a reasonable person from engaging in protected activity, and that retaliation against her was a motivating factor underlying the decision to not interview or select her for the position. (Doc. 52, pp. 70-71, ¶¶ 424-27).

First, the court finds that Burke engaged in statutorily protected activity when she filed her EEOC complaint. *See* Doc. 32, p. 11 (citing *Pipkins v. City of Temple Terrace*, 267 F.3d 1197, 1201 (11th Cir. 2001)). And Burke alleges that Bollendorf "actually knew about" the EEOC charge because she was interviewed about the charge within two months of its filing. *Martin v. Fin. Asset Mgmt. Sys., Inc.*, 959 F.3d 1048, 1053 (11th Cir. 2020); Doc. 52, p. 19, ¶ 113.

Second, Burke suffered a materially adverse action. The failure to hire Burke is a materially adverse employment action because, as she correctly notes, not being interviewed or selected for the Secretary position could "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Crawford v. Carroll*, 529 F.3d 961, 974 (11th Cir. 2008) (citation omitted).

But Burke has not plausibly alleged causation. Burke must plausibly allege facts that would prove *Bollendorf's retaliatory motive* was

---

proof and analytical framework. *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1307 (11th Cir. 2023) (citing *Standard*, 161 F.3d at 1330)).

8

a but-for cause of her rejection. *See Comcast Corp.*, 140 S. Ct. at 1014. Burke alleges that Bollendorf did not interview her or select her for the Secretary position at R.L. Young when she applied in August 2022. But her allegations do not support a finding that Burke would have received the Secretary position but-for Bollendorf's actions. *See* Doc. 32, p. 9.

And again, even if Burke plausibly alleged that Bollendorf's actions were a but-for cause of her rejection, the superintendent—not the Board's CFO—has the sole responsibility under Alabama law to make final employment recommendations to the Board. *See* Ala. Code § 16-12-19. So Superintendent Roller and Superintendent Ball are "deliberate and autonomous decision-makers" who stand in the way and break the causal connection to any alleged retaliatory motive or action of Bollendorf's. *Carruth*, 942 F.3d at 1056 (citations omitted). So the court similarly dismisses Count 14 (Retaliation) against Leslie Bollendorf.

## CONCLUSION

For these reasons, the court will **DISMISS** all official capacity claims asserted against individual defendants Watts, Bollendorf, Roller, Ball, and Thomas. The court will also **DISMISS** both Count 13 (Race Discrimination, Failure to Promote) and Count 14 (Retaliation) against Bollendorf in her individual capacity.

**DONE** and **ORDERED** on February 20, 2024.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE